```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
TRACEY JOYNER,                          :
                 Plaintiff,             :
                                        :     11 Civ. 4958 (DLC)
           -v-                          :
                                        :     OPINION & ORDER
THE CITY OF NEW YORK and CAPTAIN OF     :
CORRECTION, MICHAEL JOHNSON, Shield     :
#96,                                    :
                 Defendants.            :
                                        :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Fred Lichtmacher, Esq.
350 Fifth Avenue, Suite 7116
New York, New York 10118

For the defendants:
Daniel Chiu, for Michael A. Cardozo
Corporation Counsel of the City of New York
100 Church Street, Room 2-115
New York, New York 10007

DENISE COTE, District Judge:

Plaintiff Tracy Joyner, a New York City Correction officer, brings this action against Correction Captain Michael Johnson ("Johnson") and the City of New York alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; and the New York City Human Rights Law ("NYCHRL"), N.Y.C.

1

Admin Code § 8-101 et seq.  Specifically, the plaintiff alleges that she has been subjected to a hostile work environment on account of the repeated sexual advances of Captain Johnson, her supervisor.

On June 22, 2012, the defendants moved for summary judgment with respect the plaintiff's discrimination and retaliation claims.  The plaintiff opposed the motion, which became fully submitted on July 23.  For the reasons that follow, the defendants' motion for summary judgment is granted in part.

## DISCUSSION

Summary judgment may not be granted unless all of the submissions taken together "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts "in the light most favorable" to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008).

I.  Hostile Work Environment

A.  The Challenged Conduct

Claims of employment discrimination under the NYSHRL and the NYCHRL are generally analyzed under the same substantive standards that govern claims under Title VII of the Civil Rights Act of 1964, Leibowitz v. Cornell Univ., 584 F.3d 487, 498 & n.1 (2d Cir. 2009), although claims under the NYCHLR "must be reviewed independently from and more liberally than their federal and state counterparts." Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009).  Thus, in order to prevail on her hostile work environment claim, the plaintiff must show that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." Kaytor v. Electric Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010) (citation and emphasis omitted).  In determining whether a working environment qualifies as "abusive," courts look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. at 547 (citation and emphasis omitted).  The "effect [of the workplace environment] on the

employee's psychological well-being" may also be considered. Id. (citation omitted).

With respect to the merits of the plaintiff's hostile work environment claim, defendants' principal argument in favor of summary judgment is that there is insufficient evidence from which a jury could conclude that the plaintiff's workplace was "permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Id. at 546 (citation and emphasis omitted). It is true, as defendants note, that "[i]solated incidents generally will not suffice to establish a hostile work environment." Id. at 547. But "the question of whether a work environment is sufficiently hostile to violate Title VII is one of fact . . . [, and t]he interpretation of ambiguous conduct is an issue for the jury." Redd v. New York Div. of Parole, 678 F.3d 166, 178 (2d Cir. 2012) (citation omitted).

Here, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could conclude that the plaintiff experienced abusive conduct that was sufficiently pervasive to alter the conditions of her employment. In her deposition, the plaintiff recounted a series of uncomfortable encounters with Captain Johnson beginning in December 2008 and continuing through late 2009 that could reasonably be construed

4

as gender based.  Specifically, plaintiff described numerous occasions on which Captain Johnson attempted to kiss her, blocked her from exiting spaces, or physically interacted with her in overly familiar ways.  The plaintiff also testified that Captain Johnson twice took a beverage from her hand and drank from it, saying on one occasion, "I don't drink from just anybody, baby girl."  Captain Johnson also made numerous comments about the plaintiff's body and her attire that could reasonably be construed as sexual.  On one occasion, he allegedly knocked on the door to the locker room, calling to the plaintiff by name; when she exited, he explained that he wanted to see what she was wearing and how she acted when she was by herself.  Most egregiously, on December 28, 2009, Johnson allegedly said to the plaintiff, "Why don't you let me make love to you four, five times so I can get it out of my system.  Stop acting like you don't like me."  A reasonable jury could well conclude that this conduct created a hostile work environment for the plaintiff.

B.  Employer Liability

Defendants assert, however, that even if the conduct at issue is sufficient to establish a hostile work environment, they are entitled to summary judgment on plaintiff's Title VII claim against the City pursuant to the affirmative defense set out in Burlington Industries v. Ellerth, 524 U.S. 742, 761

5

(1998), and Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998).  Although an employer is presumptively liable for its supervisory employees' discriminatory conduct, Ellerth and Faragher establish an affirmative defense where the offending employee did not take any tangible employment action in connection with the harassment.  Faragher, 524 U.S. at 807.  To obtain the benefit of the Ellerth/Faragher affirmative defense, the employer must show "(a) that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."  Ellerth, 524 U.S. at 765.  The defendant bears the burden of persuasion on both elements, but, with respect to the second one, if the defendant can demonstrate that the plaintiff

> has completely failed to avail herself of the complaint procedure, the burden of production shifts to the employee to come forward with one or more reasons why the employee did not make use of the procedures.  The employer may rely upon the absence or inadequacy of such a justification in carrying its ultimate burden of persuasion.

Leopold v. Baccarat, Inc., 239 F.3d 243, 246 (2d Cir. 2001).

It is undisputed that the Department of Correction maintains a policy against sexual harassment and provides a process through which employees can complain about violations of that policy.  The contested issue is whether the plaintiff acted

6

"unreasonably" in failing to take advantage of that system until January 27, 2010, when she finally complained about Captain Johnson's conduct more than a year after the alleged harassment began.

Because, as even the plaintiff acknowledges, the offensive conduct ceased once she finally reported it, the defendants have carried their initial burden of showing that the plaintiff "completely failed to avail herself of the complaint procedure" during the relevant period.  Leopold, 239 F.3d at 246.  In an effort to satisfy her reciprocal burden of production, the plaintiff contends that she was deterred from complaining by the belief that the Department of Correction systematically retaliates against officers who report sexual harassment by their supervisors.

A plaintiff who asserts fear of retaliation in order to negate the Ellerth/Faragher defense must provide evidence that the threat of retaliation was "credible," such as proof "that the employer has ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints."  Leopold, 239 F.3d at 246.  Here, as in Leopold, the plaintiff has not come forward with any such evidence. Rather, she has "simply asserted her apprehension that she would be [penalized] for speaking up."  Id.  The testimony of her colleagues, which the plaintiff also cites to establish the

7

reasonableness of her fear, was similarly unspecific. Correction Officer Shatell Riddick asserted during a deposition that the Department of Correction seeks "to punish" female officers "when they complain" about sexual harassment.  But Officer Riddick did not explain the nature of the punishment to which she averted, nor did she identify particular instances of retaliatory conduct by Department of Correction personnel. Correction Officer Demetrius Allen was similarly vague when commenting that he was likely to "get backlashed" for his participation in the plaintiff's lawsuit.  Given the plaintiff's failure to show a "credible" threat of retaliation, her sudden decision to report the harassment after failing to do so for more than a year, coupled with her acknowledgment that the offensive conduct ceased once she reported it, compels the conclusion that she acted "unreasonably" in failing to take advantage of the Department of Correction's grievance procedures earlier.

Although there appears to be no controlling authority establishing that the Ellerth/Faragher defense is available to claims under state law, the New York State Court of Appeals has suggested that this is so, see Zakrzewska v. New School, 928 N.E.2d 1035, 1039 (N.Y. 2010), and the plaintiff does not argue otherwise.  The plaintiff does, however, note correctly that New York's Court of Appeals has held that "the plain language of the

NYCHRL precludes the Faragher-Ellerth defense." Id. Accordingly, although defendants' motion to dismiss is granted as to plaintiff's state and federal claims against the City, the motion is denied as to her claims under the NYCHRL.

C.  Individual Liability

Defendants next argue that Captain Johnson is entitled to summary judgment on the plaintiff's federal claims, because Title VII does not provide for individual liability. See Spiegel v. Schulmann, 604 F.3d 72, 79 (2d Cir. 2010). Defendants correctly describe the federal standard, but "under both NYSHRL and NYCHRL there is individual liability where the individual defendant actually participates in the conduct giving rise to a discrimination claim." Lee v. Overseas Shipholding Group, Inc., No. 00 Civ. 9682 (DLC), 2001 WL 849747, at *9 (S.D.N.Y. July 30, 2001). The complaint in this case does not make clear whether federal claims are asserted against Captain Johnson, or whether all claims against him are brought under state and local law. To the extent federal claims are asserted, however, defendants' motion for summary judgment is granted with respect to them.

II.  Retaliation

The defendants also seek summary judgment with respect to the plaintiff's retaliation claims. To establish prima facie case of retaliation under Title VII, a plaintiff must show (1)

that she participated in activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between protected activity and adverse employment action. Kaytor, 609 F.3d at 552.  Subject to the exception noted below, retaliation claims under the NYSHRL and the NYCHRL are subject to substantially the same legal analysis as claims under Title VII.  Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010).

     The plaintiff claims that after she reported Captain Johnson's harassing conduct on December 31, 2009, she requested his permission to work overtime twice during the following year and was refused permission each time.  She also asserts that in early 2010, Captain Johnson assigned her to work the "Red ID post" -- a particularly undesirable job -- on approximately six occasions, whereas the previous year she had been assigned to the post only once.

     In advocating summary judgment, the defendants argue in part that the plaintiff has failed to proffer any evidence from which a jury could infer that this treatment was in any way motivated by her sexual harassment complaint.  A plaintiff may satisfy the causation requirement in one of two ways:

10

> (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.

Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010) (citation omitted).  Insofar as her retaliation claim is based on the denial of overtime opportunities, the plaintiff has failed to provide evidence of either type.  In some circumstances, "[c]lose temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection" indirectly.  Kaytor, 609 F.3d at 552.  But the plaintiff's inability to recall even vaguely the dates on which she asked for and was denied overtime work negates her ability to rely on temporal proximity to establish causation.  As a result, these incidents cannot support her retaliation claim.

     The plaintiff's causation arguments regarding her assignment to the Red ID post are stronger.  According to the plaintiff, Captain Johnson assigned her to the post on approximately six occasions during the two months immediately after she reported him for sexual harassment.  These assignments were sufficiently close in time to the plaintiff's protected activity to permit a reasonable jury to infer that Captain Johnson was motivated by retaliatory animus.

11

Defendants, argue, however, that even if the plaintiff has provided sufficient evidence of causation, she has not shown that these assignments constitute "materially adverse employment action." In the retaliation context, a materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (citation omitted). This standard is broader than that which is applied under the substantive antidiscrimination provision of Title VII, and "extends beyond workplace-related or employment-related retaliatory acts and harm." Id. at 67. Nonetheless, to be "materially adverse," a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (citation omitted). The NYCHRL's anti-retaliation provision is "broader" still than its federal and state counterparts in that it rejects the materiality requirement. Fincher, 604 F.3d at 723. Even under the NYCHRL, however, in order to make out a prima facie case for retaliation, the plaintiff must point to conduct by the employer that is "reasonably likely to deter a person from engaging in protected activity," even if not "sufficiently deterrent so as to be material." Id. (citation omitted).

The defendants are correct that plaintiff's assignment to the Red ID post does not constitute adverse action, material or otherwise. It may be true, as the plaintiff claims, that the Red ID post is a particularly unsavory assignment, but it is a post to which <u>someone</u> must be assigned. The plaintiff was not assigned to this position on a permanent basis, nor has she asserted that her duties on the occasions that she was assigned to it were profoundly different from those that she normally performed. Moreover, given that the plaintiff has not asserted that she was asked to work the Red ID post more frequently than any of her colleagues, it is entirely possible that she was assigned to the post more in 2010 than in 2009 not because Captain Johnson was retaliating against her, but because, in an effort to avoid any appearance of impropriety, he had ceased to give her preferential treatment. In sum, on the record before the Court, there is no reason to believe that occasional assignment to the Red ID post is treatment that is in any way "likely to deter a person from engaging in protected activity." <u>Fincher</u>, 604 F.3d at 723. The defendants are therefore entitled to summary judgment on the plaintiff's retaliation claims.

III. Supplemental Jurisdiction

To summarize, the defendants are entitled to summary judgment on all of the plaintiff's retaliation claims, her state and federal discrimination claims against the City, and her

13

federal claims against Captain Johnson.  The plaintiff is thus left with: 1) a discrimination claim under municipal law against the City and 2) discrimination claims under state and municipal law against Captain Johnson.

Because the only claims that survive summary judgment arise entirely under state and local law, defendants urge the Court to decline to retain supplemental jurisdiction over them and to dismiss this case entirely.  Where a federal district court "dismisse[s] all claims over which it has original jurisdiction," that court has discretion over whether to exercise supplemental jurisdiction over the plaintiff's remaining state-law causes of action.  28 U.S.C. § 1367(c)(3); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 56 (2d Cir. 2004). After dismissing the plaintiff's federal claims, the court "must reassess its jurisdiction over the case by considering several related factors -- judicial economy, convenience, fairness, and comity."  Id. at 55 (citation omitted).  While the federal claims in this action have been dismissed, this case is on the eve of trial, discovery has been completed, and the remaining state law claims do not present novel issues of state law. Thus, this Court will continue to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. See Adams v. Suozzi, 517 F.3d 124, 129 (2d Cir. 2008).

CONCLUSION

Defendants' June 22 motion for summary judgment is granted in part.

SO ORDERED:

Dated:    New York, New York
          October 10, 2012

                                    _____
                                         DENISE COTE
                                    United States District Judge